IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**RANDY GILL AND BEVERLY GILL,**                                         **PLAINTIFFS**

**VS.**                                             **CIVIL ACTION NO.: 3:13cv917-HTW-LRA**

**CITY OF PHILADELPHIA, MISSISSIPPI;**                                   **DEFENDANTS**
**CITY OF PHILADELPHIA POLICE DEPARTMENT;**
**NESHOBA COUNTY, MISSISSIPPI; NEHSOBA**
**COUNTY, MISSISSIPPI SHERIFF'S DEPARTMENT;**
**RICHARD SISTRUNK, CHIEF OF POLICE FOR THE**
**CITY OF PHILADELPHIA POLICE DEPARTMENT;**
**DONNIE ATKINS, FORMER SHERIFF OF NESHOBA**
**COUNTY, MISSISSIPPI; MARK GORE; PAUL PAYNE;**
**JIMMY LOVORN; RAYBURN WADDELL, FORMER**
**MAYOR OF THE CITY OF PHILADELPHIA; LARRY SMITH;**
**AND FICTITIOUS DEFENDANTS X, Y, AND Z**

### ORDER GRANTING PAUL PAYNE'S MOTION FOR RECONSIDERATION

Before this Court is a Motion for Reconsideration or, in the Alternative, Motion to Amend or Alter Judgment of the Court [Docket No. 223], filed by Defendant Paul Payne ("Payne"). Payne files this motion pursuant to Rule 59(e) and Rule 60 of the Federal Rules of Civil Procedure following the denial of his previous Motion for Summary Judgment on the Basis of Qualified Immunity [Docket No. 78], this Court's Order on the matter having been entered on March 31, 2015 [Docket No. 220]. This Court is persuaded to GRANT this Motion for Reconsideration for the reasons herein.

### JURISDICTION

Plaintiffs Randy Gill ("Gill") and Beverly Gill asserted claims that their civil rights had been violated under Title 42 U.S.C. §1983[1]. These claims arise under a federal statute, which

---

[1] 42 U.S.C. §1983: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or

1

gives this Court subject matter jurisdiction over the matter pursuant to 28 U.S.C. §1331[2], or "federal question jurisdiction." No party has challenged the jurisdiction of this Court over the matter.

## STANDARD OF REVIEW

Payne brings this motion for reconsideration pursuant to Rule 59(e)[3] and Rule 60[4] of the Federal Rules of Civil Procedure. The United States Court of Appeals for the Fifth Circuit has held that under a Rule 59(e) motion to reconsider, a district court should consider a non-exclusive list of factors which may include, among others, the importance of evidence or arguments, and the likelihood that the non-movants will suffer unfair prejudice if the motion is reconsidered. *Estate of Sturges v. Moore*, 73 Fed. Appx. 777, 778 (5th Cir. 2003)(citing *Ford v. Elsbury*, 32 F.3d 931, 937-38 (5th Cir. 1994)). Here, Payne contends that the Court erred by applying the wrong standard in his motion for summary judgment [Docket No. 78]. The wrong standard in this matter addresses excessive force. Payne contends the Court should have applied an objective standard of review in the claims against him, as required when determining whether a party is entitled to qualified immunity. Payne asserts that the Court, in assessing the reasonableness of his act of using a taser on Gill, factored in a subjective statement by Gill that

---

other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

[2] 28 U.S.C. §1331: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[3] Fed. R. Civ. P. 59(e): Motion to Alter or Amend a Judgment. A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

[4] Fed. R. Civ. P. 60 states in pertinent part:
(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Gill did not believe he presented any threat of harm when he was tased. A discussion of objective and subjective standards when determining qualified immunity is set out below.

## QUALIFIED IMMUNITY

The Supreme Court has held that "An official sued under §1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was "clearly established" at the time of the challenged conduct." *Plumhoff v. Rickard*, 134 S.Ct. 2012 (2014). The Fifth Circuit continuously has held that the "Plaintiff bears the burden of overcoming a qualified immunity defense, and must do so by establishing specific facts which demonstrate that pursuant to the law as it existed at the time, a defendant's actions were clearly prohibited." *Anderson v. Pasadena Independent School District* 184 F.3d 439, 443 (5th Cir. 1999).

Looking to the facts and circumstances surrounding the event in question, this court cannot say that Payne violated a clearly established right of Gill's in subduing him during a search of the boarding house owned by Gill. An excerpt from this Court's previous opinion denying Payne's Motion, among others, gives a brief description of the events in question according to Payne:

> At least three officers, in addition to Payne, Smith and Gore, entered the boarding house. The officers did not knock nor announce their presence before entering; instead, the officers knocked down the doors in order to gain access to the premises, causing, say plaintiffs, damage to plaintiffs' property.
> Shortly thereafter, an emotional and physical commotion erupted. Plaintiff Randy Gill was tased, causing him to fall to the ground for approximately thirty minutes. Meanwhile, the officers completed their search of the premises.

Gill complains that the officers tased him and searched his property without legal justification. The officers respond that they possessed a search warrant duly signed by a judge and that they subdued Gill because he was interfering with a lawful search. Constable Payne, in his deposition, gave the following account of the events:

A. As I approached Mr. Gill and Officer Clark, Mr. Gill was stating that it was his property and he wanted to know what was going on. Officer Clark stated that we were executing a search and he [Gill] needed to step back. And [Gill] said, this was his property, he was going on the property. And - -

Q. Well, he actually was already on the property, right?

A. Officer Clark, at that time, told [Gill] that he needed to step back and he refused, [Gill] tried to push through Officer Clark to go see what was going on, and at that time, Officer Clark instructed [Gill] to place his hands behind his back. He refused to place his hands behind his back. Officer Clark and I attempted to take [Gill's] hands and put them behind his back, [Gill] refused.

Q. Were you in the process of - -

A. And at that time, I instructed Mr. Gill that if he did not comply with the direct order that I was going to tase him. I advised [Gill] of that at least once more, and he still did not comply. I pulled out my taser, I removed the cartridge, which is on the end, that deploys the treble-hook-like prongs and I took the taser itself and dry stunned [Gill's] left leg for less than three seconds.

Deposition of Paul Payne pp. 35-36. Payne further testified that:

4

      A.      [Gill] was trying to get around or through or however you want to say it, Officer Clark, to see what was going on in the receiving of the search warrant.

Further in the opinion, the Court heard testimony from Gill recounting his own version of the events:

      A.      [I] asked them about the search warrant.

      Q.      Okay.  You continued to walk towards - -

      A.      Yeah.

      Q.      Towards them.  Okay.  And how did the first person to person contact happen?

      A.      Well, we made - - I assume, when they realized I was not going back in the café, that they started walking towards me.

      Q.      Okay.

      A.      So they sort of met - - we met each other.

      Q.      Okay. All right.  And then what happened?

      A.      They insisted I go back in.

      Q.      Right.

      A.      They continued to tell me to go back in the café.  And that - - and I continued to ask them about a copy of the search warrant.

      Q.      Okay.

      A.      And they insisted that I go back into the café.

      Q.      Right.

A.   And then I was interfering with their operation - - one of them - - maybe both of them said that. But I said, I'm not interfering with what y'all are doing, I'm just asking for a copy of the search warrant. I said, doors are being kicked in and I want to know what's the basis for this.

Q.   Okay. And so what happened then?

A.   And then after they decided within themselves that I was not going back in, Paul [Payne] said they he was going to tase me if I didn't go back in.

Q.   Okay.

A.   And I said, Paul, you know me. I said, there's no need for this. I said, I'm only asking for a copy of the search warrant.

Q.   Okay.

A.   And they ignored that, and Paul. I think may have been correct when he said it again. Go back. I said, I said, I don't have to go back. I'm the property owner. And I said, where I am not, I'm not interfering with what you guys are doing. I want a copy of the search warrant.

Q.   Okay.

A.   And then they proceeded to struggle - - well, they caught me, and that's when they - - the struggle pursued when I said, look, I said there's no need for this. I sort of raised my hands up. I said, there's no need for - - to try and handcuff me. I said, I just want a copy of the search warrant. But they insisted on handcuffing me.

Q.   Okay.

6

A. And this - - the handcuffs came after the tasing. The tasers - - the tasers came first, then the handcuffs.

Q. Okay. When you say, you raised your hands up?

A. Yeah.

Q. Okay. At that point, had either they or had any contact between either you and Lovorn happened at that point?

A. Well, there was contact with - - between all three of us, at that point.

Q. Okay.

Q. When you raised your hands up?

A. Well, yeah, there was contact. There was continued contacts.

Q. Okay.

A. They had already started to try to get my arms around me, is when I raised my hands and said, there's no need for this. They were attempting put handcuffs on me then.

Q. Okay.

A. And I said, there's no need for this. I said, I just - - all I'm asking for is a copy of the search warrant.

Q. Okay. All right. And then - - okay, so you said, you said, Paul told you, I'm going to tase you?

A. Right.

Q. All right. And he said, I'm going to tase you again?

A. Uh – huh.

Deposition of Randy Gill, pp.92-95.

While Gill's subjective statements show that he did not think he was presenting any harm to the officers, the Court must view the circumstances objectively. It is uncontested, that Gill refused to comply with police orders, was warned of being tased, raised his arms to prevent being handcuffed, and had a physical contact with the officer arresting him. [Docket No. 220]. Courts have held that the use of a taser and handcuffs when a suspect was actively resisting police commands and was warned is reasonable force. *Jez. V. City of Waveland*, 2012 U.S. Dist. Lexis 7048, 9-10 (S.D. Miss Jan. 23, 2012). Objectively following this reasoning, every reasonable officer in that position would not have thought a Constitutional right was being violated and would have thought that the action of Payne was reasonable.

Gill argues that Payne used his taser in the execution of an illegal search pursuant to an invalid search warrant, and therefore should not be protected by qualified immunity. The Fifth Circuit Court of Appeals has held that so long as the officer reasonably believed his actions were justified, he is entitled to qualified immunity ("Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir.2000) (emphasis added) (internal quotation and citation omitted); see also *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987) ("... it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable")). Applying this objective standard, the Court is persuaded to grant qualified immunity to Payne.

8

## **SEARCH WARRANT**

Gill has two other claims against Payne: that Payne caused property damage during the search and that Payne's act of tasing Gill allowed the allegedly illegal search to continue. This court now rejects both positions.

It is undisputed that Payne was not involved in the procurement or presentation of the 'no knock' search warrant. Payne was merely part of the group of officers that accompanied Officer Smith and Officer Gore (affiants of the search warrant) to the boarding house, the place to be searched.

The Fifth Circuit has held that officers who are simply present in the execution of the search warrant and had no involvement in its procurement are entitled to qualified immunity from injuries resulting from that invalid search warrant. In *Michalik v. Hermann*, the Fifth Circuit reversed the district court's decision to deny qualified immunity to officers who were not the actual affiants of the search warrant, stating:

> We are unwilling, however, to extend such liability . . . beyond the affiant and person who actually prepared, or was fully responsible for the preparation of, the warrant application. Here, it is undisputed that no officer other than Fitzpatrick, the affiant officer, was responsible for the preparation or presentation of the warrant application to the judge. Although issues of fact may exist as to the roles that Levis and Toye played in the investigation, and in providing some of the information to Fitzpatrick, these issues of fact are not material to the warrant claim because none of the evidence suggests that Levis and/or Toye prepared or presented the warrant or were fully responsible for its preparation or presentation.

*Michalik v. Hermann*, 422 F.3d 252, 260 (5th Cir. 2005).

Payne has never been identified as one of the officers who originally procured the search warrant in question. In fact, testimony from Officer Gore shows that Payne was invited to join the search because ""[Payne' is a much faster runner than I am, and he did have a taser." (Gore Dep. Pg. 35, Lines 7-11). Thereafter, he acted in what he thought was a reasonable manner

9

during a lawful search based upon what he had been told by those who had obtained the search warrant. Pursuant to Fifth Circuit authority, this Court does not extend liability toward Payne for property damage caused by other officers during the allegedly illegal search.

Gill also alleges property damage to his boarding house, asserting that exterior and interior doors were kicked in and damaged. Gill, though, is unable to establish that Payne actually damaged any of the doors. Payne's deposition testimony was that he does not recall whether the door through which he entered was locked or open. Gill offers no testimony on the matter. Therefore, Payne cannot be said to have any liability for the property damage allegedly sustained by Gill.

## **CONCLUSION**

Upon reviewing the relevant submissions of the parties, as well as applicable case law and statutes on the matter, this Court is persuaded to GRANT Payne's Motion to Reconsider **[Docket No. 223].** Summary judgment is granted in favor of Defendant Paul Payne on the basis of qualified immunity. As a part of this Order, the Court adopts and embraces the content of the discussion of the parties via telephone on October 28, 2016, as transcribed by the court reporter.

SO ORDERED, this the 28th day of October, 2016.

                                            s/ HENRY T. WINGATE
                                            UNITED STATES DISTRICT JUDGE